

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| **SCOTT HANSEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **DALLAS/FORT WORTH** | § | **3-10CV1102-N** |
| **INTERNATIONAL AIRPORT BOARD,** | § | |
| | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

Now comes Plaintiff Scott Hansen (sometimes referred to herein as "Plaintiff" or as "Hansen"), and files this his Original Complaint against Dallas/Fort Worth International Airport ("DFW" or "Defendant"), and for his causes of action and grounds for relief shows as follows:

I.

### Introduction

1.01    Plaintiff would show the Court that Defendant DFW wrongfully fired him from his job in violation of the Rehabilitation Act of 1973 as amended, 29 U.S.C.A. § 794 (the "Rehabilitation Act"), the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*, (the "ADA"), and under the Texas Commission on Human Rights Act codified in the Texas Labor Code.

II.

### Parties

2.01    Plaintiff Scott Hansen is an individual residing  at 1413 Fieldstone Court East, Bedford, Texas 76022.

2.02     Defendant Dallas/Fort Worth International Airport Board ("DFW") is a domestic non-profit corporation with its headquarters located at DFW International Airport, 3200 East Airfield Drive, DFW Airport, Texas 75261.     Defendant may be served with process by and through its Registered Agent in Texas, Gary E. Keane, 3200 East Airfield Drive, DFW Airport, Texas 75261.

III.

### Jurisdiction and Venue

3.01     Jurisdiction is conferred on this Court by The Rehabilitation Act of 1973 as amended, 29 U.S.C. §§ 791(b) and 794, EEOC Regulation 29 C.F.R. § 1614.101 et. seq., and by 28 U.S.C. § 1331.  Jurisdiction is further conferred on this Court pursuant to Title I of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

3.02     Defendant has waived any governmental immunity to suit or liability by receiving federal financial assistance in the operation and improvement of the Airport and its facilities. 42 USCA §2000d-7.  The Texas Legislature has further waived liability for suit and liability as to state discrimination laws.     Texas Labor Code §21.002(9)(D)(defining "employer" to include municipalities and state instrumentalities); §21.254(allowing civil action).

3.03     Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this C1omplaint took place, in whole or in part, within the boundaries of this district.  28 U.S.C. § 1391(e)(3).

IV.

## Factual Allegations

4.01     Plaintiff began working for DFW on or about June 18, 1986.  He worked there as a Heavy Equipment Technician until the events described below.

4.02     Plaintiff was diagnosed as Bipolar, and as having Major Depression in approximately 1995.  Plaintiff has sought medical treatment for his conditions, and is able to perform his essential job functions with prescription medicines to control his symptoms.  Without the prescription medications, these  conditions substantially impair one or more major life functions.

4.03     In approximately April of 2008, Hansen went to David Comeaux in Human Resources to complain of sexual harassment by his lead person, James Durham.  Mr. Comeaux advised that he would investigate Plaintiff's complaint.

4.04     About six weeks after Plaintiff's spoke with HR, he was contacted by Superintendent James Green and advised that his claims had been substantiated and he was to return to work.

4.05     Shortly thereafter, Plaintiff was summoned to the superintendent's office and advised that he was going to be required to furnish a doctor's note pertaining to his medical condition.

4.06     Approximately one year later, Plaintiff's supervisor asked Hansen if he was still taking antidepressants.    The supervisor was aware of Plaintiff's condition because he had been receiving notes from Plaintiff's doctor for years.

4.07     On June 12, 2009, Plaintiff went for a jog at about 10:40 a.m., which was his normal daily routine during his lunch hour.   On this particular day, Plaintiff left earlier than usual, but his departure did not adversely affect operations, and he had discretion on when he could take his lunch hour.  While jogging, Plaintiff's lead person pulled up behind him in his car and said Hansen had

left early and took Hansen back to the shop.  The lead person, James Durham, then told Plaintiff to wait there and about five minutes later superintendent James Green came into the room and took Plaintiff to Green's office and called Human Resources.  A human resources representative arrived there in about 20 minutes.  Plaintiff advised that he had smelled food cooking; that he was alone in the shop; and as it was about lunchtime, so he changed and went for his jog.

4.08    Hansen was requested to submit to drug and alcohol testing to which he agreed. David Comeaux then told Plaintiff to go home and await the results of the tests.  James Durham and another person drove Plaintiff and Plaintiff's truck to the testing office and then took Hansen home.

4.09    After approximately one week elapsed, Plaintiff was contacted by the Risk Management Department and was advised that the tests were negative for drugs and alcohol.  This call took place on a speaker phone with Tammy Butler and the head of Risk Management, Steve Francis.  Hansen was then requested to sign documents permitting the employer to secure medical information from Plaintiff's physicians concerning his Depression and Bipolar diagnosis.  They also advised that they wanted Hansen to see an Employee Assistance Program counselor.

4.10    The EAP called Plaintiff and advised that they wanted Hansen to see their Physiologist and wanted the notes from Plaintiff's doctors.   Plaintiff complied and went to the psychologist and two psychiatrists.  By the end of July, the psychologist advised Plaintiff that he was good to work and the EAP was still going over the doctor's paperwork.

4.11    The EAP never rendered a decision to Plaintiff's knowledge.  However, by September of 2009, all three doctors wanted to release the Plaintiff to return to work with no restrictions.  In the interim, Defendant had placed Plaintiff on short term disability, thereby indicating the reason they

would not allow him to return to work was his medical condition, and that they regarded him as being disabled.

4.12     Hansen was anxious to return to work and faxed all of the information to Tammy Butler.  Steve Francis and Dr. Ouseph called numerous times to talk with Tammy Butler to ascertain the reason Plaintiff was not permitted to return to work.   It had been made clear to Tammy Butler that Plaintiff's medications were non-narcotic and were not mind-altering.

4.13     Plaintiff continued to call Steve Francis to obtain permission to return to work. Francis continuously told him that, "this was complicated and he would get back with me." He never called Plaintiff back.

4.14     On or about November 28, 2009, Plaintiff finally filed an EEOC Intake Questionnaire, and checked the box requesting to file a charge of disability discrimination.

4.15     Hansen then received a letter dated December 9, 2009, stating that since 180 days had elapsed, Plaintiff was terminated. Plaintiff has filed an amended charge complaining of retaliation and termination.  Under EEOC regulations, the amended charge filed in April 2010 relates back to the filing of the Intake Questionnaire. 29 C.F.R. §1601.12(b).

V.

**First Count**

**Rehabilitation Act Disability Discrimination**

5.01     The foregoing paragraphs of this Complaint are incorporated in this Count by reference as if set forth at length herein.

5.02     Defendant has discriminated against Plaintiff solely because of his handicap/disability with respect to the terms and conditions of his employment by refusing to accommodate Plaintiff by

allowing him to return to work with his prescription medication, by discriminating and retaliating against Plaintiff, and by ultimately discharging Plaintiff.  Defendant has thereby intentionally engaged in unlawful employment practices prohibited by the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, the EEOC Regulations 29 C.F.R. §1614.101, et. seq.

5.03    Such discrimination by Defendant against Plaintiff was intentional.   Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.  Further, this discrimination was done by Defendant with intentional malice or with reckless indifference to Plaintiff's protected rights.  Such discrimination constitutes gross, wanton, reckless, and/or intentional violation of Plaintiff's rights.  Plaintiff is therefore also entitled to recover punitive damages.  Plaintiff is also entitled to recover all costs of Court, expert fees and attorneys' fees.

VI.

## Second Count

### ADA - Disability Discrimination

(Contingent on Right to Sue Letters)

6.01    Plaintiff incorporates the foregoing paragraphs as though set forth verbatim herein.

6.02    Plaintiff has filed a charge of discrimination with the EEOC for both his suspension and termination.  The Intake Questionnaire filed on November 28, 2009 constitutes a Charge of discrimination, which was later amended by a formal charge filed on or about April 6, 2010.  This claim will mature when the EEOC issues its right to sue letter(s).

6.03     Plaintiff suffers from a disability under the statutory definition provided in the ADA because Plaintiff's diagnosis with Bipolar Disorder and Major Depression mean he had a disability, a record of an impairment, and/or was regarded as having an impairment by Defendant. Plaintiff was clearly regarded as having a disability that substantially limited one or more major life functions because Defendant has refused to allow him to return to work, insisted he contact mental health professionals, and placed him on short term disability for a period of six months despite receipt of return to work letters from his doctors.

6.04     Plaintiff was and is a qualified individual for the job in question. With the reasonable accommodation of prescription medication, Plaintiff can perform the essential functions of his job. Plaintiff had, in fact, performed the essential functions of his job for approximately twenty-three (23) years.

6.05     An adverse employment action was taken against Plaintiff on account of his disability, and/or because Plaintiff filed an EEOC charge in the form of an Intake Questionnaire.

6.06     Plaintiff was treated less favorably than non-disabled employees.

6.07     Defendant violated the ADA by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's record of actual or perceived disability.

6.08     Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done with malice or with reckless

indifference to Plaintiff's federally-protected rights. Plaintiff is therefore also entitled to recover punitive damages.

6.09    Plaintiff is entitled to an award of attorneys' fees and costs under the ADA.

6.10    Plaintiff is further entitled to an injunction reinstating him to work with full seniority and benefits.

VI.

**Third Count**

**Texas Labor Code - Disability Discrimination**

(Contingent on Right to Sue Letters or statutory period)

6.01    Plaintiff incorporates the foregoing paragraphs as though set forth verbatim herein.

6.02    Plaintiff has filed a charge of discrimination with the EEOC for both his suspension and termination. The EEOC is a qualifying entity for such claims to be filed. This claim will mature when the EEOC issues its right to sue letter(s), or upon the expiration of the statutory period set forth in Texas Labor Code §21.208.   Such time period has already elapsed for the initial Intake Questionnaire filed on November 28, 2009 as to Plaintiff's suspension, and the subsequent formal charge filed in April 2010 relates back to this initial date for purposes of limitations.   29 C.F.R. §1601.12(b).  To the extent the April 2010 Charge contains new information which does not relate back, then the balance of Plaintiff's claims will mature as to such new claims when the EEOC issues a right to sue letter, or upon the expiration of 180 days from the filing of such Charge.

6.03    Plaintiff suffers from a disability under the statutory definition provided in the Texas Labor Code because Plaintiff's diagnosis with Bipolar Disorder and Major Depression mean he had a disability, a record of an impairment, and/or was regarded as having an impairment by Defendant.

Plaintiff was clearly regarded as having a disability that substantially limited one or more major life functions because Defendant has refused to allow him to return to work, insisted he contact mental health professionals, and placed him on short term disability for a period of six months despite receipt of return to work letters from his doctors.

6.04    Plaintiff was and is a qualified individual for the job in question.  With the reasonable accommodation of prescription medication, Plaintiff can perform the essential functions of his job. Plaintiff had, in fact, performed the essential functions of his job for approximately twenty-three (23) years.

6.05    An adverse employment action was taken against Plaintiff on account of his disability, and/or because Plaintiff filed an EEOC charge in the form of an Intake Questionnaire.

6.06    Plaintiff was treated less favorably than non-disabled employees.

6.07    Defendant violated the ADA by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's record of actual or perceived disability.

6.08    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally-protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

6.09    Plaintiff is entitled to an award of attorneys' fees and costs under the Texas Labor Code.

6.10    Plaintiff is further entitled to an injunction reinstating him to work with full seniority and benefits.


WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that after court in this matter, the court grant Plaintiff the following relief against Defendant.

(1)    Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity and past and future medical expenses;

(2)    Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

(3)    Exemplary damages in an amount to be determined by the trier of fact;

(4)    An order by the Court reinstating Plaintiff as an employee of the Defendant in a similar position with similar pay and benefits to that from which he was wrongfully terminated, or, in the alternative, future pay in an amount to be determined by the Court;

(5)    Prejudgment and post-judgment interest at the maximum legal rate;

(6)    Attorneys' fees;

(7)    Experts fees;

(8)    All costs of court; and

(9)    Such other and further relief to which Plaintiff may be justly entitled.


Dated: June 3, 2010.

Respectfully submitted,

KILGORE & KILGORE, PLLC

By: _____

THEODORE C. ANDERSON
State Bar No. 01215700
JOHN  H. CROUCH, IV
State Bar No. 00783906

3109 Carlisle, Suite 200
Dallas, TX  75204
(214) 969-9099 - Telephone
(214) 953-0133 - Fax

ATTORNEYS FOR PLAINTIFF
SCOTT HANSEN